# Exhibit 11

# ICC INTERNATIONAL COURT OF ARBITRATION

## CASE No. 21395/FS

GLISPA GMBH

(Germany)

vs/

CUPCAKE DIGITAL, INC.

(United States)

This document is a certified true copy of the original of the Final Award on Costs rendered in conformity with the Rules of Arbitration of the ICC International Court of Arbitration.

**GLISPA GMBH**
(Germany)

the Claimant

v.

**CUPCAKE DIGITAL, INC.**
(United States)

the Respondent

(together with the Claimant the "**Parties**")

# Final Award on Costs

CERTIFIED TRUE COPY OF THE ORIGINAL

PARIS, 10/8/16

José Ricardo FERIS
Deputy Secretary General
ICC International Court of Arbitration

# TABLE OF CONTENTS

**PART ONE: PROCEDURE** ........................................................................................................3
I.     Introduction..............................................................................................................3
II.    **The Parties** ..............................................................................................................3
A.     The Claimant ...........................................................................................................3
B.     The Respondent......................................................................................................4
III.   **The Arbitral Tribunal** ..............................................................................................4
IV.    **The Arbitration Agreement**....................................................................................5
V.     **Place of the Arbitration** .........................................................................................5
VI.    **Language of the Arbitration** .................................................................................5
VII.   **The Applicable Law**................................................................................................5
A.     The Law and Procedural Rules Governing the Arbitration.................................5
B.     Applicable Substantive Law ..................................................................................6
VIII.  **Procedural History** .................................................................................................6
IX.    **Prayers for Relief on Costs** .................................................................................10
A.     The Claimant's Prayers for Relief on Costs .......................................................10
B.     The Respondent's Prayers for Relief on Costs .................................................10

**PART TWO: REASONS**...........................................................................................................10
I.     Introduction............................................................................................................10
II.    **Costs of the Arbitral Proceedings** .....................................................................11
III.   **Allocation of the Costs** ........................................................................................11
A.     The Parties' Positions...........................................................................................11
B.     Costs of the Arbitral Proceedings.......................................................................11
C.     Parties' Reasonable Legal and Other Costs ......................................................11
IV.    **Interest on Costs** ..................................................................................................13

**PART THREE: AWARD**...........................................................................................................15

# PART ONE: PROCEDURE

## I. INTRODUCTION

1. The present arbitration was commenced by Glispa GmbH ("**Glispa**") by filing a Request for Arbitration with the Secretariat of the International Court of Arbitration of the International Chamber of Commerce against Cupcake Digital, Inc. ("**Cupcake**") dated 10 October 2015.

2. By correspondence of 21 and 22 April 2016, respectively, the Parties informed me that they had settled their disputes on the merits, both requesting me to render an award by consent pursuant to Article 32 of the ICC Rules of Arbitration (the "**ICC Rules**").

3. Moreover, the Claimant has requested an award on costs, issue regarding which the Parties have not been able to find a settlement.

4. I have rendered a separate award by consent ("**Award by Consent**") dealing with the merits of the dispute.

5. The present award deals with the costs of the arbitration.

## II. THE PARTIES

### A. The Claimant

6. **Glispa GmbH** is a company established under German law, having its registered office at:

    Glispa GmbH
    Sonnenburger Str. 73
    10437 Berlin
    Germany

7. The Claimant is represented in this arbitration by:

    **Axel Benjamin Herzberg, LL.M.**
    HERZBERG LEGAL
    Haus Cumberland
    Kurfürstendamm 194
    10707 Berlin
    Germany

    Tel:     +49 30 700 15 96 83
    Fax:     +49 30 700 15 96 84
    E-mail:  axel.herzberg@herzberlegal.eu

B.  **The Respondent**

8.  **Cupcake Digital, Inc.** is a company established under the laws of the United States of America, having its registered office at:

    Cupcake Digital, Inc.
    30 Irving Place, 10th Floor
    New York City, NY 10003
    United States of America

    Tel:    +1 415 762 99 88
    Tel:    +1 646 568 77 88
    Fax:    +1 646 964 65 72
    Email:  brad.powers@cupcakedigital.com

9.  For the majority of this arbitration, including with respect to the issue of costs, the Respondent was not represented by legal counsel. In view of the Award by Consent only, the Respondent was represented by[1]:

    **Mendy Piekarski, Esq.**
    SICHENZIA ROSS FRIEDMAN FERENCE LLP
    61 Broadway, 32nd Floor
    New York, NY 10006
    U.S.A

    Tel:     +1 212 930 9700
    Fax:     +1 212 930 9725
    E-mail:  mpiekarski@srff.com

10. Correspondence with the Respondent and its legal counsel (where applicable) was made by means of email and courier, except for the time when the Respondent was participating, when minor communication was made by email only in accordance with section 4.1 of the Procedural Rules. Both the Respondent and its legal counsel (where applicable) used the above indicated email addresses for communication. Whilst delivery of the correspondence sent by courier to Mr Piekarski's offices could always be confirmed, delivery to the Respondent could only be effectuated and confirmed until April 2016. The courier correspondences to the Respondent in May and June 2016 could no longer be delivered, which was communicated to the Claimant by letter dated 13 June 2016.

## III. THE ARBITRAL TRIBUNAL

11. On 4 February 2016, the ICC International Court of Arbitration (the "**ICC Court**") appointed, pursuant to Article 13 of the ICC Rules, as Sole Arbitrator:

---

[1] See the Respondent's request for an award by consent dated 21 April 2016.

**Dr Christopher Boog**
Schellenberg Wittmer Ltd
Löwenstrasse 19
P.O. Box 2201
8021 Zurich
Switzerland

Tel:   +41 (0)44 215 93 84
Fax:   +41 (0)44 215 52 00
Email: christopher.boog@swlegal.ch

## IV. THE ARBITRATION AGREEMENT

12. The Claimant derives my jurisdiction from the arbitration agreement contained in section 12 of the Terms and Conditions of the Insertion Order No. IO_GlispaGmbHCupcake_ iStoryTime_TB0914- (the "**Contract**"), which reads as follows:

    "*Governing Law.*

    *All disputes arising out of or in connection with the present contract or its validity shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce (ICC) by one or more arbitrators appointed in accordance with the said Rules and without recourse to the ordinary courts of law. The place of the arbitration is Berlin, Germany. The language of the arbitration is English. The applicable substantive law is German law.*"

13. The Respondent has not raised any objection to my jurisdiction.

14. Therefore, and given that the Parties have jointly requested that I render an award by consent in this arbitration, I am satisfied that a finding on jurisdiction is not required in this case.

## V. PLACE OF THE ARBITRATION

15. The place of arbitration pursuant to Article 18 of the ICC Rules is Berlin, Germany.[2]

## VI. LANGUAGE OF THE ARBITRATION

16. The language of the arbitration is English.[3]

## VII. THE APPLICABLE LAW

### A. The Law and Procedural Rules Governing the Arbitration

17. The place of arbitration being Berlin, Germany, the present arbitration is governed by the German Arbitration Act as set forth in the 10th book of the German Code of Civil Procedure.[4]

---

[2] See section 12 of the Contract.
[3] See section 12 of the Contract.

18. As reflected in Section 14 of the Terms of Reference, the arbitral proceedings are governed by the following procedural rules: (a) the applicable mandatory provisions of the German Code of Civil Procedure; (b) the ICC Rules; (c) the Terms of Reference; (d) the "Procedural Rules" issued on 29 March 2016; (e) any additional procedural rules which the Parties may agree or which, failing such agreement, I may order.

## B. Applicable Substantive Law

19. Pursuant to section 12 of the Contract, the applicable substantive law is German Law.

## VIII. PROCEDURAL HISTORY

20. On 10 October 2015, the Claimant filed a Request for Arbitration in terms of Article 4 of the ICC Rules with the Secretariat of the ICC International Court of Arbitration (the "**ICC Secretariat**").

21. On 28 October 2015, the ICC Secretariat notified the Request for Arbitration to the Respondent.

22. On 15 December 2015, the ICC Secretariat notified the Parties that the 30-day time limit for the Respondent to submit the Answer pursuant to Article 5(1) ICC Rules had expired on 30 November 2015 without such Answer having been filed. Pursuant to Article 6(3) and 6(8) of the ICC Rules, the ICC Secretariat informed the Parties that the arbitral proceedings would proceed notwithstanding. It further informed that the arbitral tribunal will decide any question of jurisdiction or of whether the claims may be determined together pursuant to Article 6(3) of the ICC Rules unless the Secretary General referred the matter to the ICC Court for its decision.

23. On 21 January 2016, the ICC Secretariat notified the Parties that the ICC Court had decided pursuant to Article 12(2) of the ICC Rules to submit the arbitration to one arbitrator and had decided to take the necessary steps for the appointment of the Sole Arbitrator pursuant to Article 13(3) of the ICC Rules.

24. On 4 February 2016, the ICC Court appointed me as Sole Arbitrator and submitted the file to me pursuant to Article 16 of the ICC Rules.

25. On 11 February 2016, I invited the Parties to indicate by 19 February 2016 whether they agreed that the Case Management Conference may be conducted by means of a telephone conference, as well as to state their availabilities regarding the proposed dates for the Case Management Conference.

26. On 16 February 2016, Mr Brad Powers, Chairman and CEO of the Respondent, sent an email to confirm his availability for the Case Management Conference on any of the proposed dates after 7 March 2016.

27. On 17 February 2016, the Claimant confirmed its availability to hold the Case Management Conference on 9 March 2016.

---

[4] § 1025(1) of the German Code of Civil Procedure reads: "*The provisions of this Book apply if the place of arbitration as referred to in § 1043 (1) is situated in Germany.*"

28. On 18 February 2016, I proposed that the Case Management Conference be held on 9 March 2016 starting 8 a.m. New York/2 p.m. Berlin/9 p.m. Hong Kong time.

29. On 18 February 2016, the Respondent confirmed its availability at the proposed date and time.

30. The Claimant did the same by email of 24 February 2016.

31. The Case Management Conference was held on 9 March 2016. The Respondent did not participate. After the Case Management Conference, the Respondent's representative wrote to inform me that he was feeling unwell, requesting that the Case Management Conference be re-scheduled.

32. Following the Case Management Conference, I wrote to the Parties on 14 March 2016, attaching summary minutes of the Case Management Conference for the Parties' review and comments, particularly drawing the Respondent's attention to the proposed time schedule for the arbitration as reflected in the draft minutes. I also enclosed draft procedural rules and revised draft Terms of Reference. The Parties were invited to review all documents and to submit any comments, including any final revisions to the draft Terms of Reference, by no later than 21 March 2016. The Respondent was expressly invited again to provide its position and prayers for relief for inclusion in the Terms of Reference. Finally, I proposed alternative dates for a further Case Management Conference in case, after having reviewed the documents sent on 14 March 2016, including in particular the minutes of the Case Management Conference held on 9 March 2016, the Respondent insisted on such a further Case Management Conference. The Respondent was invited to indicate by no later than 16 March 2016 whether it upheld its request to hold a further Case Management Conference.

33. The Respondent neither indicated by 16 March 2016 that it requested a further Case Management Conference to be held, nor did it comment on the minutes of the Case Management Conference of 9 March 2016, the draft Terms of Reference or the draft procedural rules.

34. On 18 March 2016, the Claimant requested that I order the Respondent to pay its share of the advance on costs fixed by the ICC Court at USD 16'500 by way of an "interim order."

35. On 21 March 2016, I invited the Respondent to proceed to the payment of its share of the advance on costs and granted the Respondent until 31 March 2016 to reply to the Claimant's request for an interim order. Further, the Claimant provided its final comments to the draft Terms of Reference, as well as some minor comments on the draft procedural rules.

36. On 22 March 2016, I submitted the Terms of Reference to the ICC Secretariat in view of a possible approval of the Terms of Reference by the ICC Court.

37. On 24 March 2016, the ICC Secretariat provided its comments on the Terms of Reference.

38. On 29 March 2016, I submitted the Terms of Reference to the Parties for signing and issued the Procedural Rules.

39. On 30 March 2016, the ICC Court notified me of the Claimant's petition, filed on 23 March 2016, for an order of attachment in aid of arbitration under the New York Civil Practice Law and Rules.

40. On 1 April 2016, I issued Procedural Order No. 1, whereby I ordered the Respondent again to pay its share of the advance on costs of USD 16'500 by 8 April 2016.

41. Also on 1 April 2016, the ICC Secretariat informed me of the correspondence by the Claimant relating to the Claimant's petition in front of the U.S. District Court for the Southern District of New York.

42. On 4 April 2016, the Claimant submitted an electronic copy of the signed Terms of Reference by e-mail. The Claimant further requested me to confirm the deadline of 22 April 2016 for the Parties to file their written memorials, which had tentatively been set during the Case Management Conference.

43. On the same date, the Respondent informed by e-mail that it had retained counsel in the name of Mr Mendy Piekarski, Esq.

44. On 5 April 2016, I wrote to Mr Piekarski, requesting him to confirm that he indeed represented the Respondent in these proceedings, to confirm that he is in possession of the case file, to return the signed Terms of Reference, to provide comments on the Minutes of the Case Management Conference and to urge the Respondent to comply with Procedural Order No. 1.

45. In light of the circumstances, I did not confirm 22 April 2016 as the deadline for the simultaneous submission of the statement of claim and defense at the time. The Respondent's counsel did not respond to my queries, nor did the Respondent pay its share of the advance on costs.

46. On 11 April 2016, the ICC Secretariat issued a payment request for the Claimant to pay the Respondent's share of the advance on costs of USD 16'500 by 26 April 2016.

47. On the same date, I issued Procedural Order No. 2, by which I issued the Procedural Timetable.

48. On 13 April 2016, I received the four originals of the Terms of Reference signed by the Claimant.

49. On 21 April 2016, the Respondent submitted a request for an award by consent dated 20 April 2016.

50. On 22 April 2016, the Claimant submitted a request for an award by consent in identical terms as that requested by the Respondent the day before, and requested for the second Case Management Conference, scheduled on 3 May 2016, as well as the hearing of 3-4 June 2016 to be canceled. The Claimant further requested the closing of the proceedings with respect to the matters to be decided in the award by consent. Finally, the Claimant requested for the Parties to be granted until 20 May 2016 to file submissions regarding the costs of the arbitration.

51. On 25 April 2016, I wrote to the Parties to cancel the second Case Management Conference as well as the hearing.

52. On 28 April 2016, in light of the joint request for an award by consent, I invited the Parties to waive the Terms of Reference by 4 May 2016. I further invited the Respondent to comment on the Claimant's request for a deadline until 20 May 2016 to file submissions regarding the cost of the arbitration. Finally, I encouraged the Parties to find an agreement on costs by 4 May 2016 and indicated that, should such an agreement not be reached, I would have to render a final award on costs in addition to the award by consent on the merits.

53. On 3 May 2016, the ICC Secretariat acknowledged receipt of the Respondent's share of the advance on costs in the amount of USD 16'500 from the Claimant in substitution.

54. On 4 May 2016, the Claimant waived the Terms of Reference. The Respondent did not waive the Terms of Reference.

55. On 11 May 2016, the Claimant reiterated its request for me to close the proceedings with regard to the issues to be settled in the award by consent and to grant the Parties until 20 May 2016 to submit their submissions on costs.

56. On 12 May 2016, I noted that the Respondent had not waived the Terms of Reference and that it had not commented on the Claimant's request regarding submissions on costs. I granted the Parties until 20 May 2016 for their respective submissions on costs of the arbitration. Further, I declared the proceedings closed pursuant to Article 27 of the ICC Rules with regard to the issues dealt with in this award by consent.

57. On 17 May 2016, I submitted the Terms of Reference to the ICC Court for approval in terms of Article 23(3) of the ICC Rules.

58. On 20 May 2016, the ICC Secretariat advised that the ICC Court had extended the time limit for establishing the Terms of Reference pursuant to Article 23(2) of the ICC Rules to 31 July 2016 and that the Terms of Reference would be submitted to the ICC Court for approval.

59. On the same day, the Claimant submitted its submission on costs.

60. On 9 June 2016, the ICC Court approved the Terms of Reference and invited the Respondent to sign the Terms of Reference within 15 days from the day following the receipt of its correspondence. The ICC Secretariat further informed the Parties that the time limit for rendering the final award shall be 6 months from 9 June 2016.

61. By letter dated 27 June 2016, I declared the proceedings closed pursuant to Article 27 of the ICC Rules with regard to all remaining issues not dealt with in the Award by Consent.

62. I submitted this Final Award on Costs to the ICC for scrutiny pursuant to Article 33 of the ICC Rules on 27 June 2016. It was approved by the ICC Court on 21 July 2016, subject to my consideration of the points raised by the Court.

## IX. PRAYERS FOR RELIEF ON COSTS

### A. The Claimant's Prayers for Relief on Costs

63. In its statement of costs, the Claimant submitted the following prayers for relief relating to the costs of this arbitration:

    "1. ORDER that Respondent must bear the costs of the arbitral proceedings;

    2. ORDER Respondent to pay to Claimant

       a. USD [*] for the ICC administrative expenses and the fees and expenses of the Sole Arbitrator, both paid by Claimant;

       NOTE: [*] = The Sole Arbitrator to insert amount to be fixed by the Court.

       b. EUR 35,100.00 plus USD 20,028.62 for attorney fees;

    plus simple interest at 5 percentage points above the base rate of the German Federal Reserve Bank per year from 20 May 2016 until full and final payment."

### B. The Respondent's Prayers for Relief on Costs

64. The Respondent has not submitted any prayers for relief regarding costs.

## PART TWO: REASONS

### I. INTRODUCTION

65. Article 37(1) ICC Rules defines the costs of the arbitration as

    "the fees and expenses of the arbitrators and the ICC administrative expenses fixed by the Court, in accordance with the scale in force at the time of the commencement of the arbitration, as well as the fees and expenses of any experts appointed by the arbitral tribunal and the reasonable legal and other costs incurred by the parties for the arbitration."

66. The costs of the arbitration are therefore twofold. On the one hand, the costs of the arbitral proceedings, consisting of the fees and expenses of the Sole Arbitrator and the ICC administrative expenses fixed by the Court. On the other hand, the Parties' legal and other costs, consisting of the legal fees and the expenses incurred by the Parties for the arbitration to the extent that they are deemed reasonable.

67. When allocating costs, it is common to give particular attention to the outcome of the case. This means that the party having entirely won the arbitration shall generally be allowed to recover some or all of its reasonable costs from the losing party.

68. Further, pursuant to Article 37(5) ICC Rules I shall take into consideration the "*extent to which each party has conducted the arbitration in an expeditious and cost-effective manner.*"

## II. COSTS OF THE ARBITRAL PROCEEDINGS

69. At its session of 21 July 2016 the ICC Court fixed the costs of the arbitral proceedings at USD 25,000.

70. The Claimant paid its share of the advance on costs ordered by the ICC Secretariat, as well as the Respondent's share in substitution, each in the amount of USD 16,500, and therefore covered the costs of the arbitral proceedings in full.

## III. ALLOCATION OF THE COSTS

### A. The Parties' Positions

71. The Claimant's position with regard to the allocation of costs is that, pursuant to the Contract, "*in the event the advertiser is past due with payment claims under the contract, it must bear Claimant's attorney fees.*"[5] Further, the Claimant puts forward that the Respondent, by accepting the terms of the Award by Consent, acknowledged that the entirety of the payment was past due when the Claimant initiated the arbitration. Consequently, the Claimant asserts that the Respondent must bear the costs of the arbitration in their entirety.[6] The Claimant further asserts that it conducted the proceedings in the most efficient manner possible and points out the Respondent's failure to participate during the course of the arbitration.[7]

72. The Respondent has not submitted its position regarding the allocation of costs.

### B. Costs of the Arbitral Proceedings

73. In determining the allocation of the costs of the arbitral proceedings, I have considered the fact that the Parties have reached a settlement with respect to the merits of the dispute before me and that, according to that settlement, the Respondent shall pay to the Claimant the full amount initially claimed by the Claimant in this arbitration.[8] The situation is therefore essentially as if the Claimant had fully succeeded in the arbitration.

74. I also take into account the Parties' conduct in this arbitration, noting that whereas the Claimant has at all times acted expeditiously, some delay was caused by the Respondent's partial non-participation in the proceedings.

75. Therefore, I find that the Respondent shall bear the entire costs of the arbitral proceedings.

### C. Parties' Reasonable Legal and Other Costs

76. With regard to the allocation of the Parties' legal and other costs, I take into account that, as mentioned above,[9] the situation in this arbitration following the settlement on the

---

[5] *See* the Claimant's submission of 20 May 2016, ¶7 with reference to Exhibit C-5.
[6] *See* the Claimant's submission of 20 May 2016, ¶8.
[7] *See* the Claimant's submission of 20 May 2016, ¶9.
[8] *See* above ¶¶49 and 50.
[9] *See* above ¶73.

77. Pursuant to Article 37(1) ICC Rules, when determining the recoverability of the Parties' legal and other costs, I must have regard to the reasonableness of such costs.

78. With respect to the reasonableness of the costs asserted by the Claimant, the Claimant, in its statement of costs, outlines the fee structure for both the German and the U.S. law firm it retained for the present arbitration.

79. As to the legal fees of its German counsel, the Claimant argues that the amount of legal fees is reasonable, as the application of the usual hourly rate would have resulted in higher legal costs than the fee structure applied in the present case. Further, the Claimant contends that its German counsel spent a comparatively high amount of hours due to the fact that it had substantially completed the statement of claim due on 22 April 2016, when the case was eventually settled on the merits one day prior.[10]

80. As regards the legal fees of the Claimant's U.S. counsel, the Claimant submits that the invoices issued are based on reasonable hourly rates of USD 475.00 per attorney and USD 70.00 for non-attorney timekeepers such as paralegals. The Claimant asserts that the work done by its U.S. counsel related both to the arbitral proceedings and the ancillary proceedings in aid of the arbitration, which the Claimant brought against the Respondent before the U.S. District Court of the Southern District of New York.[11] The Claimant offers two separate arguments as to why the costs of its U.S. counsel are recoverable in their entirety, i.e. including in relation to the ancillary proceedings, as reasonable legal and other costs in this arbitration. First, the Claimant argues that these costs are recoverable under the title of a substantive reimbursement claim based on either the "Billing" section[12] of the Contract or § 280(1) of the German Civil Code, the latter providing for the recovery of damages in case of breach of an obligation.[13] Second, the Claimant refers to Article 37(1) ICC Rules as an independent legal basis for the recoverability of the costs mentioned hereinabove. In this regard, the Claimant argues that the costs claimed were accrued as an immediate consequence corollary to this arbitration and benefitted the arbitration itself, as they were in aid of the present proceedings. The Claimant further contends that the ancillary proceedings were a reasonable measure in view of the swift resolution of the Parties' dispute, as it was the reason for the Respondent's application for an award by consent. This, in turn, led to a fast resolution of the dispute and thus saved both time and costs.

81. I consider the Claimant's legal costs for its German counsel to be reasonable under the circumstances of this case, including in particular the fact that settlement was reached only on the eve of the submission of the Claimant's full Statement of Claim.

---

[10] See the Claimant's submission of 20 May 2016, ¶¶15 to 18.

[11] See the Claimant's submission of 20 May 2016, ¶¶19 to 22 with reference to Exhibit C-7.

[12] The relevant part of this section reads: "In the event Advertiser is more than 30 days past due in paying amounts owed, Advertiser is liable for attorney fees and other costs of collection."

[13] § 280(1) of the German Civil Code reads: "If the debtor breaches a duty arising from the obligation, the creditor may demand damages for the damage caused thereby."

82. As regards the costs claimed for the Claimant's U.S. counsel, following the Claimant's second argument with respect to those costs,[14] I consider the legal costs for both the arbitral proceeding and the ancillary proceeding in aid of the arbitration to be costs incurred for the arbitration pursuant to Article 37(1) of the ICC Rules read in conjunction with §1057 of the German Arbitration Act.[15]

83. I deem the Claimant's legal costs for its U.S. counsel to be reasonable under the circumstances. In particular, I deem the costs of the ancillary proceedings in New York to be reasonable given the Respondent's conduct in the arbitration, including in particular its regular non-participation. Given that I consider the costs incurred for the Claimant's U.S. counsel to constitute reasonable costs recoverable under Article 37(1) of the ICC Rules read in conjunction with §1057 of the German Arbitration Act, I need not take a decision regarding the alternative legal bases argued by the Claimant.

84. For all the foregoing reasons, I find that the Respondent shall bear the Claimant's legal and other costs and expenses in this arbitration in full.

## IV. INTEREST ON COSTS

85. In addition to claiming compensation for costs and expenses, the Claimant contends that it is entitled to interest on such costs, both with respect to the costs of the arbitral proceedings and with respect to its legal and other costs.[16]

86. The applicable substantive law is German Law.[17] I shall therefore have regard to §§ 291[18] and 280[19] of the German Civil Code[20] when deciding on interest on costs. As to the applicable interest rate, I consider the German standard simple interest rate which is calculated at 5 percentage points above the base rate of the German Federal Reserve Bank to be the applicable interest rate, because the applicable law in this case is German Law and the place of this arbitration is in Berlin, Germany.

---

[14] See the Claimant's submission of 20 May 2016, ¶¶35 to 37.

[15] § 1057(1) of the German Arbitration Act reads: "*Unless the parties agree otherwise, the arbitral tribunal shall allocate, by means of an arbitral award, the costs of the arbitration as between the parties, including those incurred by the parties necessary for the proper pursuit of their claim or defence. It shall do so at its discretion and take into consideration the circumstances of the case, in particular the outcome of the proceedings.*"

[16] See above ¶63.

[17] See above ¶19.

[18] § 291 of the German Civil Code reads: "*The debtor must pay interest on a money debt from the date of litispendence onwards, even if he is not in default; if the debt only falls due later, interest must be paid from its due date onwards. The provision of section 288 (1) sentence 2, (2) and (3) and section 289 sentence 1 apply mutatis mutandis.*"

[19] § 280 of the German Civil Code reads: "*(1) If the debtor breaches a duty arising from the obligation, the creditor may demand damages for the damage caused thereby. (2) Damages for delay in performance may be demanded by the obligee only subject to the additional requirement of § 286. (3) [...].*"

[20] Both submitted as C-Lex 11.

87. Whereas pursuant to § 291 of the German Civil Code interest on costs is to be granted as of the date of issuance of the final award, § 280(2) in connection with § 286[21] of the German Civil Code permits me to grant interest on costs also as of an earlier moment – i.e. from the point in time when the underlying costs, on which interest is claimed, were incurred – up until the issuance of the final award.

88. Based on these provisions, the Claimant shall be awarded interest at 5 percentage points above the base rate of the German Federal Reserve Bank on both the costs of the arbitral proceedings and its reasonable legal and other costs as per 20 May 2016, i.e. as claimed.

* * * * *

---

[21] § 286(1) of the German Civil Code reads: *"If the obligor, following a warning notice from the obligee that is made after performance is due, fails to perform, he is in default as a result of the warning notice. Bringing an action for performance and serving a demand for payment in summary debt proceedings for recovery of debt have the same effect as a warning notice."*

## PART THREE: AWARD

89. Based on the reasons stated above, I hereby render the following

**Final Award on Costs**

(1) The Respondent shall bear the costs of this arbitration.

(2) Accordingly, the Respondent is ordered to pay to the Claimant

    (a) USD 25,000 for the ICC administrative expenses and the fees and expenses of the Sole Arbitrator;

    (b) EUR 35,100.00 plus USD 20,028.62 as attorney fees;

    (c) simple interest at 5 percentage points above the base rate of the German Federal Reserve Bank per year from 20 May 2016 until full and final payment on the amounts as per lit. (a) and (b) hereinabove.

(3) All other requests and claims are dismissed.

Seat of the Arbitration: Berlin, Germany

Date: 29 July 2016

**The Sole Arbitrator**

Christopher Boog

SW-04944791

CERTIFIED TRUE COPY OF THE ORIGINAL
PARIS, 10/18/16
15/15
José Ricardo FERIS
Deputy Secretary General
ICC International Court of Arbitration